**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LAURA FRANKLIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:08-CV-1031-M |
| AT&T CORP., METROPOLITAN LIFE | § | |
| INSURANCE CO., and AT&T LONG | § | |
| TERM DISABILITY PLAN FOR | § | |
| MANAGEMENT EMPLOYEES, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment [Docket Entry #32], Plaintiff Laura Franklin's Objection to Summary Judgment Evidence and Motion to Strike [Docket Entry #40], and Defendants AT&T Corporation ("AT&T") and AT&T Long Term Disability Plan for Management Employees' Motion for Summary Judgment [Docket Entry #24]. For the reasons stated below, Metropolitan Life Insurance Company's Motion for Summary Judgment is **GRANTED** and Plaintiff Laura Franklin's Objection to Summary Judgment Evidence and Motion to Strike is **DENIED**. Defendants AT&T and AT&T Long Term Disability Plan for Management Employees' Motion for Summary Judgment is **DENIED**.

*Background*

The relevant facts are undisputed. Plaintiff Laura Franklin ("Franklin") worked at AT&T as a systems analyst and Senior Technical Staff Member from 1988 to 1999. Franklin's disability arises from a number of causes, including Crohn's disease, breast cancer,

1

chemotherapy, chills, night sweats, chronic nausea, chronic diarrhea, weakened bones, and

depression. In 1999, Franklin applied for long term disability benefits from the AT&T Long

Term Disability Plan for Management Employees ("the Plan"). AT&T had previously

contracted with Metropolitan Life Insurance Company ("MetLife") for MetLife to be the Plan's

claims administrator, delegating to MetLife the authority to "evaluate disabilities, resolve claims

and appeals and administer the Plan on behalf of [AT&T]."[1] AT&T was ultimately responsible

for paying benefits under the Plan, but MetLife was in charge of evaluating individual claims.

The Plan began paying Franklin benefits in February 2000, and continued to do so until

late 2002. The Plan required Franklin to apply for Social Security disability insurance benefits.

Franklin did so, and, after several denials and requests for reconsideration, in August 2002, she

was found by an Administrative Law Judge to have been disabled since January 1999, and

thereby entitled to Social Security benefits. As a result of that ruling, MetLife and the Plan

demanded that Franklin reimburse the Plan $37,567.05, which she did.

A few months later, MetLife wrote to Franklin, stating that it was reviewing her

eligibility for continued benefits under the Plan. After obtaining information from Franklin and

her doctor, and considering the recommendations of an "Independent Physician Consultant"

("IPC") and a vocational consultant, MetLife determined that Franklin was no longer eligible for

long term disability benefits under the Plan. MetLife concluded that there were other

occupations for which Franklin was qualified, and that Franklin's medical problems could be

addressed through the Family Medical Leave Act ("FMLA"). Franklin timely appealed. A nurse

consultant reviewed Franklin's file, and MetLife rejected her appeal.

On December 31, 2006, AT&T terminated MetLife as the Plan's claims administrator.

Franklin filed suit on June 19, 2008, claiming that AT&T, the Plan, and MetLife wrongfully

---

[1] Dkt. No. 15 at 13-14.

denied her long term disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[2]  Franklin seeks benefits, plus interest, a declaration of disability, and attorney fees.

MetLife seeks summary judgment on all Franklin's claims, because it was terminated as claims administrator before suit.  MetLife also seeks summary judgment on a claim that Franklin has not raised, breach of fiduciary duty; accordingly, the Court **DENIES** Metlife's motion as moot on such claim.

 AT&T seeks summary judgment on all Franklin's claims, contending it did not abuse its discretion in denying Franklin's claim.  Franklin moves to strike AT&T's summary judgment appendix.

*Summary Judgment Standard*

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact.[3]  "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[4]  Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.[5]

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact.[6]  In determining whether genuine

---

[2] 29 U.S.C. § 1001, *et seq.*
[3] *See* Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[4] *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25).
[5] *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

issues of material fact exist, factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists.[7] A district court properly grants summary judgment if, when viewing the facts in the light most favorable to the nonmovant, the movant shows that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law.[8]

*MetLife's Motion for Summary Judgment*

Franklin seeks payment of plan benefits under ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B).  Because MetLife is no longer the claims administrator and has no control over the administration of the Plan, MetLife argues that it is not capable of providing relief.  In her response, Franklin acknowledges that this Court cannot direct prospective relief against MetLife, but contends that MetLife is still liable for (1) the funds that Franklin should have received pursuant to the Plan; (2) prejudgment interest on any such amounts; and (3) attorney fees.  The Court addresses the narrow legal issue of whether a former claims administrator can be liable for disability benefits, prejudgment interest, or attorney fees.

MetLife is entitled to summary judgment because undisputed evidence in the record shows that MetLife is no longer the claims administrator for the Plan, under which Franklin seeks to recover benefits.  In *Hall v. LHACO, Inc.*, the plaintiff sought benefits from a purported plan administrator who no longer had any connection to the plan.[9]  Under ERISA § 502(d)(2), benefits can only be obtained against the plan as an entity.[10]  Because the plaintiff's claim under § 502(a)(1)(B) was not "redressable" against the former plan administrator, the plaintiff in *Hall*

---

[7] *Lynch Props.*, 140 F.3d at 625; *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).
[8] Fed. R. Civ. P. 56(c).
[9] 140 F.3d 1190, 1191 (8th Cir. 1998).
[10] *Id.* at 1196 (citing 29 U.S.C. § 1132(a)(1)(B)).

had no standing to pursue the claim.[11]  In *Thomas v. Aetna Life Insurance Co.*, this Court, citing *Hall*, found that the plaintiff had no standing to pursue his claims against a former claims administrator, and granted its motion for summary judgment.[12]  Since MetLife is no longer associated with the Plan, it is in no position to pay out benefits, even if those benefits should have been paid sooner.[13]  Since MetLife cannot provide Franklin relief under ERISA, Franklin's claim is not "redressable" against MetLife.  Franklin, like the plaintiff in *Hall*, has no standing to pursue her claim for benefits against MetLife.  Accordingly, Franklin can neither recover prejudgment interest nor attorney fees from MetLife, both of which depend upon the existence of a redressable claim.[14]  The Court therefore **GRANTS** MetLife's Motion for Summary Judgment.

*Franklin's Motion to Strike*

Franklin moves to strike AT&T's summary judgment appendix because the affidavit authenticating the records did not state that the facts included in the affidavit were "true," "accurate," or "correct," and because of an alleged contradiction in the affidavit as to how the records were kept.  The affidavit of the custodian of records that she is "personally acquainted with the facts herein stated" is sufficient to create a reasonable inference that the affidavit was made on personal knowledge.[15]  It is not a requirement that affidavits given under oath expressly state that the contents are "true and correct."[16]  There is no contradiction in the affidavit, which explains that the records were prepared by MetLife before being transferred to Sedgwick Claims Management Services, Inc., which kept the claim file records in the regular course of business. The authenticity and trustworthiness of the records in the appendix have not been challenged.

---

[11] *Id.*

[12] No. 3:99-CV-1163-M, 2000 WL 1239129, at *2 (N.D. Tex. Aug. 31, 2000), *aff'd*, 273 F.3d 1101 (5th Cir. 2001).

[13] *See Garin v. Aetna Health & Life Ins. Co.*, No. H-03-3294, 2005 WL 1840148, at *4 (S.D. Tex. Aug. 1, 2005) (granting the former claim administrator's motion for summary judgment).

[14] *See generally Cliburn v. Policy Jury Ass'n of Louisiana, Inc.*, 165 F.3d 315, 316 (5th Cir. 1999).

[15] *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530-31 (5th Cir. 2005); *see also* Fed. R. Civ. P. 56(e)(1).

[16] *Id.*

The affidavit meets the requirements of Fed. R. Civ. P. 56(e)(1), and the Court finds that the claim file is trustworthy and reliable.  Franklin's Motion to Strike is **DENIED**.

*AT&T's Motion for Summary Judgment*

Because the Plan vested the claims administrator with discretionary authority to determine eligibility for benefits, the Court reviews the denial of benefits for abuse of discretion.[17]  Factual determinations under an ERISA plan are also reviewed for abuse of discretion.[18]  A decision to deny benefits will be sustained if it is supported by substantial evidence, and was not arbitrary and capricious.[19]  Substantial evidence has been defined as "more than a scintilla, less than a preponderance," and is comprised of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]  A decision is arbitrary if it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence."[21]

AT&T argues that there was no abuse of discretion in the denial of Franklin's long term disability claim based on the evidence presented to the claims administrator, MetLife.  AT&T contends that Franklin failed to provide sufficient objective data to support her claim of an impairment that was so severe as to prevent her from performing sedentary work, and emphasizes that her claim was reviewed by a case manager, nurse consultant, appeals manager, and an IPC.[22]  The IPC found that (1) although Franklin had a serious case of Crohn's disease,

---

[17] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004).
[18] *See Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).
[19] *See Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)); *see also Sundown Ranch, Inc. v. John Alden Life Ins. Co.*, No. 3:01-CV-1445, 2003 WL 21281642, at *3 (N.D. Tex. May 29, 2003).
[20] *Corry*, 499 F.3d at 397-98.
[21] *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir. 1996).
[22] To be considered disabled under the Plan, an employee must be "incapable of performing the requirements of any job for any employer (including non-AT&T employment), (as a management or occupational employee), for which the individual is qualified or may reasonably become qualified by training, education or experience, other than a job

6

recent diagnostic testing revealed no active Crohn's disease or fistulas, and showed a small bowel and colon that appeared normal; (2) there was no evidence that Franklin's breast cancer had metastasized, and Franklin had a very good prognosis; and (3) Franklin had not been under the care of a mental health professional for depression.[23]

Franklin argues that MetLife failed to give adequate consideration to the determination that she was totally disabled for Social Security purposes, that MetLife ignored and distorted the opinions of her treating physician, and that it relied on the "mere possibility" that she could return to gainful employment.  Approximately eight months after the Social Security determination, MetLife began a review of her claim, which it denied fourteen months later.  In another case where, as here, the plan encouraged a Social Security application, received a monetary benefit from Social Security's finding of disability, and then terminated benefits, the Seventh Circuit found an abuse of discretion.[24]  Similarly, the Sixth Circuit held that a plan which benefited from the determination that a claimant was totally disabled for Social Security purposes should have given appropriate weight to that determination.[25]

The IPC did not mention the Social Security determination in her Physician Consultant Review of December 5, 2003, suggesting that she gave no weight to the decision, assuming she even knew about it.[26]  Although a Social Security "determination of disability is not dispositive of a disability determination under an ERISA plan," it is highly relevant to a determination of

---

that pays less than 50 percent of the Eligible Employee's Eligible Pay that would have been in effect on the day preceding the day that the Eligible Employee's Sickness Disability Benefits ceased."  AT&T App. at 844-45.
[23] AT&T App. at 100-02.
[24] *See Ladd v. ITT Corp*., 148 F.3d 753, 755-56 (7th Cir. 1998).
[25] *See Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 669 (6th Cir. 2006).
[26] AT&T App. at 100-02.  *See Adams v. Metro. Life Ins. Co.*, 549 F. Supp. 2d 775, 789 (M.D. La. 2007); *see, e.g.*, *Calvert v. Firstar Fin., Inc*., 409 F.3d 286, 296 (6th Cir. 2005) ("[D]r. Soriano does not mention the SSA disability determination at all, even to discount or disagree with it, which indicates that he may not even have been aware of it.").

whether the claims administrator acted arbitrarily and capriciously.[27]  Although that

determination is highly relevant, its significance is somewhat tempered by MetLife's review of

medical records, generated after the Social Security finding of disability, some of which showed

improvement in Franklin's health.  The Court will consider the Social Security determination and

MetLife's failure to address it, in determining if there was an abuse of discretion in Franklin's

case.[28]

      Although MetLife was not required to accord special weight to the opinions of Franklin's

treating physicians or explain why it credited conflicting evidence, it was not permitted to

"arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating

physician."[29]

      On January 3, 2004, Dr. Gottesman, Franklin's gastroenterologist, wrote MetLife

responding to the IPC's December 2003 review.  Dr. Gottesman noted that Franklin had repeated

flare-ups of her Crohn's disease which were sometimes "incapacitating."[30]  Although there was

no recent fistula formation, Dr. Gottesman reported that Franklin had significant complications

from her Crohn's disease, including anemia and depression.[31]  He further stated that:

> Ms. Franklin quite clearly is not reliable in the sense of being able, on a daily
> basis, to perform the activities normally required by an employer. . . . Given her
> track record over the last five years, I would anticipate significant periods of time
> where the patient would be incapacitated in performing any meaningful
> employment. . . . I believe that she is justifiably requesting a continuation of her
> disability benefits.[32]

---

[27] *Adams*, 549 F. Supp. 2d at 789; *see also Schully v. Continental Cas. Co.*, 634 F. Supp. 2d 663, 685 (E.D. La. 2009) ("[T]he Social Security Administration's decision that Plaintiff is entitled to recover disability benefits, while only a single factor in the Court's overall analysis, is at least persuasive evidence of Plaintiff's condition and should be considered.").
[28] *Id.*
[29] *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003); *see also Corry*, 499 F.3d at 402 ("An administrator does not abuse its discretion by relying on the medical opinions of its consulting physicians instead of the medical opinions of a claimant's treating physicians.").
[30] AT&T App. at 91-92.
[31] *Id.*
[32] *Id.*

MetLife's June 21, 2004 letter terminating Franklin's benefits noted that Dr. Gottesman's remarks had been considered by the IPC and that "Dr. Gottesman agreed with our assessment regarding the level of your functioning.  His disagreement came in his opinion that no employer would accommodate you for those periods when you would be unable to work."[33]  MetLife concluded that the number of days that Franklin would need to take off from work would not exceed FMLA, and that there were several occupations for which Franklin was qualified in the geographical area where she lived.[34]  MetLife referenced Dr. Gottesman's opinion that Franklin was not reliable on a daily basis to perform the work normally required by an employer, stated that Dr. Gottesman agreed with MetLife's assessment about Franklin's level of functioning, but nevertheless found that Franklin's disability did not preclude her from returning to work.[35]

On July 12, 2004, Dr. Gottesman wrote to MetLife stating that its position in the June 21, 2004 letter was "unjustifiable," noting that Franklin was suffering from arthritis, an ankle fracture, recent flare-ups of her Crohn's disease, and would need major dental work.[36]  He stated that FMLA would not apply to a patient unable to work, what he estimated, 20 out of 30 days per month, and that Franklin was "truly disabled."[37]  In its November 22, 2004 letter upholding the termination of benefits, MetLife purportedly considered Dr. Gottesman's July 12, 2004 letter, but ignored the new conditions described in it.[38]  MetLife repeated the IPC's conclusion that Franklin would not have absences exceeding the number of days off allowed under FMLA.[39]

On December 1, 2004, Dr. Gottesman wrote a final letter to MetLife, stating that its characterization of his letter was incorrect, and repeating his conclusion that Franklin would be

---

[33] AT&T App. at 81-84.
[34] Id.
[35] Id.
[36] AT&T App. at 63-64.
[37] Id.
[38] AT&T App. at 51-54.
[39] Id.

an unreliable employee, who would have difficulty working on a regular basis, even in a sedentary position.[40]  He noted that Franklin was almost never able to work and that the FMLA would not resolve her difficulties.[41]  On January 7, 2005, MetLife sent a letter to Franklin's counsel, stating that its decision to deny Franklin's claim would not be changed.[42]

An administrator abuses its discretion when it "refuses to consider additional evidence presented in an insured's appeal of a coverage denial or when it engages in a 'selective review of the administrative record' to justify a decision to terminate coverage."[43]  It is impermissible for an administrator to focus on "slivers of information" that arguably support a denial of coverage and ignore, without explanation, evidence contradicting a denial of coverage.[44]  MetLife's failure to consider all of the evidence before it, namely the opinions of Franklin's treating physician, weighs in favor of a finding that its determination was arbitrary and capricious.[45]

MetLife did not consider the eligibility requirements of the FMLA, which define an "eligible employee" as "an employee who has been employed (i) for at least 12 months by the employer . . . and; (ii) for at least 1,250 hours of service with such employer during the previous 12-month period . . . ."[46]  Because Franklin would not be eligible for leave under FMLA during the first 12 months of her employment,[47] and the IPC determined that Franklin should remain on

---

[40] AT&T App. at 49-50.

[41] *Id.*

[42] AT&T App. at 46.

[43] *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007) (internal citations omitted).

[44] *Id.*

[45] *See Adams*, 549 F. Supp. 2d at 790; *cf. Corry*, 499 F.3d at 401 (finding no abuse of discretion when the administrator and its consulting physicians "considered, evaluated, and addressed" the claimant's subjective complaints); *Sundown*, 2003 WL 21281642, at *3 (finding no abuse of discretion when the administrator relied on its consulting physicians' determinations).

[46] *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 353 (5th Cir. 2006) (quoting 29 U.S.C. § 2611(2)).  *See, e.g., Dolese v. Office Depot, Inc.*, 231 F.3d 202, 203 (5th Cir. 2000) (affirming dismissal of FMLA claim because employee had not been employed "for at least 12 months by the employer" and thus was not an "eligible employee" for purposes of FMLA).

[47] *See* 29 U.S.C. § 2611(2).

disability if ineligible under FMLA,[48] there was not a rational basis for the termination of

Franklin's disability.

MetLife's vocational consultant did not consider the extent of Franklin's disability when

he determined that Franklin could return to full-time work.  Notably, the IPC recommended that

Franklin initially return to part-time work.[49]  The vocational consultant found that Franklin could

perform "sedentary" work, which is defined in the Dictionary of Occupational Titles as:

> Exerting up to 10 pounds of force occasionally and/or a negligible amount of
> force frequently to lift, carry, push, pull or otherwise move objects, including the
> human body.  Sedentary work involves sitting most of the time but may involve
> walking or standing for brief periods of time.  Jobs are sedentary if walking and
> standing are required only occasionally and all other sedentary criteria are met.[50]

A Physician's Capabilities Evaluation, prepared by Dr. Gottesman on July 24, 2003, found that

Franklin could sit for only two hours per day, occasionally lift items up to 10 pounds, and never

carry items up to 10 pounds.[51]  He noted that Franklin had not been released to return to work,

and probably never could be.[52]  Dr. Gottesman doubted that Franklin could "perform any

meaningful type of labor for some time."[53]  Dr. Gottesman's November 16, 2003 Accident or

Sickness Statement confirmed Franklin's total disability.[54]  The vocational consultant's

assessment, conducted by file review, considered only the IPC's December 2003 report and Dr.

Gottesman's January 2004 letter.  There is an abuse of discretion when there is not a rational

connection between the information on which the reviewer relied and the conclusion that a

claimant was not disabled, which the Fifth Circuit found to have occurred when a review ignored

---

[48] AT&T App. at 83 ("It appears as though this is an FMLA case and I would agree with Dr. Gottesman that if the
time you need off from work secondary to you[r] medical condition exceeds that period of time that is allowed by
FMLA, you should be maintained on disability.").
[49] AT&T App. at 102.
[50] AT&T App. at 87.
[51] AT&T App. at 559-63.
[52] AT&T App. at 559.
[53] AT&T App. at 560.
[54] AT&T App. at 104.

or misstated the results of a physician's capabilities evaluation.[55]  The vocational consultant did not review Dr. Gottesman's Physician's Capabilities Evaluation or Accident or Sickness Statement, which both found that Franklin could not perform sedentary labor.  There is also an abuse of discretion when an administrator sends a "cherry-picked" file to a vocational consultant in the hope of obtaining a favorable report.[56]  MetLife should have provided the vocational consultant with all medical records relevant to Franklin's capacity to work,[57] including the Physician's Capabilities Evaluation and Accident or Sickness Statement, which confirmed Franklin's total disability and inability to perform sedentary labor.  The withholding of those from the vocational consultant strongly supports a finding that MetLife abused its discretion.

The record does not show that the vocational consultant considered whether any employer would accommodate Franklin.  The report provided only job titles and noted that the demand level was "sedentary," but did not describe the responsibilities involved with each position.[58]  The undisputed evidence before the consultant demonstrated that Franklin could not work a number of days each month due to her disabilities, would be incapacitated at several points during each work day, must be located near a restroom, and should initially begin work on a part-time basis.  The possibility that Franklin could return to work under limited and unlikely circumstances does not mean that she was not disabled, and the contrary conclusion in this context reflects an abuse of discretion.[59]

---

[55] *See Alexander v. Hartford Life & Accident Ins. Co.*, No. 09-10072, 2009 WL 3172195, at *2 (5th Cir. Oct. 5, 2009).
[56] *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) (finding an abuse of discretion when the file provided to a vocational consultant did not include a Physician's Capabilities Evaluation).
[57] *Id.*
[58] AT&T App. at 87.
[59] *See Glenn*, 461 F.3d at 674; *see also Havens v. Continental Cas. Co.*, 186 F. Appx. 207, 213 (3d Cir. 2006) ("But where, as here, the claimant's disabilities are indisputably substantial, the insurer has done nothing to rule out extraordinarily rigorous restrictions to be found in the record, and the proposed alternate occupations consist merely of unexplained job titles, accurate comparison is impossible.  Accordingly, Continental's denial of benefits was arbitrary and capricious.")

"[A] district court may grant summary judgment against a movant even if the non-movant has not filed a cross-motion."[60]  Since AT&T moved for summary judgment on the legal issue of abuse of discretion, it had notice that the issue would be dispositive and sufficient opportunity to come forward with all of its evidence and to present its best case.[61]  Factual and expert discovery was completed on June 10, 2009, approximately two months before the summary judgment deadline.  AT&T included an 871-page appendix to its brief, which comprehensively addressed the issue of abuse of discretion.  Although Franklin has not filed a motion for summary judgment, the Court finds that she is entitled to summary judgment on her claim against AT&T.  Considering the Social Security determination that Franklin was totally disabled, MetLife's failure to address Social Security's findings, the refusal to credit and failure to consider Dr. Gottesman's opinions, the IPC's determination that Franklin should return to part-time work, MetLife's concession that Franklin should remain on disability if not covered by FMLA, Metlife's exclusion of the Physician's Capabilities Report and Accident or Sickness Statement from the file that it provided to the vocational consultant, and the improbable circumstances under which Franklin could return to work, there is no genuine issue of material fact that the termination of Franklin's benefits was arbitrary and capricious.  AT&T's Motion for Summary Judgment is **DENIED** and summary judgment in favor of Franklin is **GRANTED**.

*Conclusion*

The Court **ORDERS** AT&T to pay long term disability benefits under the Plan retroactive from July 2004 to the date of Judgment.  The Court further **ORDERS** AT&T to continue to make future long term disability benefits under the Plan for so long as Franklin

---

[60] *U.S. Cellular Corp. v. City of Wichita Falls*, 364 F.3d 250, 255 n.6 (5th Cir. 2004) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 730 (5th Cir. 2003)).  *See Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985); *U.S. Fleet Servs. v. City of Fort Worth*, 141 F. Supp. 2d 631, 637 n.3 (N.D. Tex. 2001).
[61] *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 145 n.29 (5th Cir. 2005) (citing *Celotex*, 477 U.S. at 326); *B.E.S.C., LLC v. Lubbock County*, No. 5:04-CV-070-C, 2005 WL 1383163, at *7 (N.D. Tex. June 9, 2005).

remains disabled, as defined in the Plan.  The parties shall confer on the award of benefits,

attorney fees, costs, and interest to which Franklin is entitled and shall file, by March 16, 2010, a

joint brief identifying their respective positions.

  **SO ORDERED**.

February 24, 2010.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**

14